STATE OF NEBRASKA, APPELLEE, V.
WILLIAM E. SODDERS, APPELLANT.

304 N.W.2d 62

Filed April 3, 1981. No. 43574.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein for appellant.

Paul L. Douglas, Attorney General, and Lynne Fritz for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The defendant, William E. Sodders, pleaded guilty

to the crime of an attempt to commit murder in the first degree and was sentenced to a term of imprisonment of from 15 to 30 years in an institution under the jurisdiction of the Department of Correctional Services. This is a Class II felony for which the maximum sentence is imprisonment for 50 years. Neb. Rev. Stat. §§ 28-201 and 28-105 (Reissue 1979). He has appealed from an order of the District Court overruling his motion to vacate its judgment and sentence. We affirm.

The information filed charged that "on or about the 5th day of March" 1980 "William E. Sodders ... did ... purposely and with deliberate and premeditated malice attempt to kill Judith Sodders." The intended victim was the estranged wife of the defendant. The record reveals that the defendant entered his plea of guilty while represented by counsel. His constitutional rights and the consequences of a guilty plea were fully and clearly explained to him by the trial court, and his plea was freely, voluntarily, and knowingly entered. The facts admitted by the defendant were that he had arranged over the phone with some parties to kill his wife for a payment of $5,000, and that he had made a downpayment of $500 to the man who was to accomplish this act. The balance was to be paid after the killing. The defendant was arrested immediately after making the downpayment.

Criminal attempt is defined by § 28-201 as follows:

"(1) A person shall be guilty of an attempt to commit a crime if he:

"(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

"(b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

"(2) When causing a particular result is an element of the crime, a person shall be guilty of an attempt to commit the crime if, acting with the state of mind

required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

"(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent."

The necessary elements of the crime of murder in the first degree consist of purposely and with deliberate and premeditated malice killing another person. Neb. Rev. Stat. § 28-303 (Reissue 1979).

The defendant contends that the court was in error in denying his motion to vacate the judgment of conviction because: (1) The information failed to charge the essential statutory elements of the crime; and (2) The statute relating to criminal attempt is unconstitutionally vague.

The defendant's constitutional attack is based upon his assertion that the criminal attempt statute is so complex as to be beyond ordinary comprehension and, as a result, fails to provide adequate notice of what conduct it proscribes. In order to comport with due process of law, a criminal statute must be reasonably clear and definite. *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980).

Section 28-201(1)(a) prohibits intentional conduct which is done with the requisite mens rea of the attempted crime, and which conduct would constitute the crime if all of the facts and circumstances were as the defendant believed them to be. For example, if a person purposefully and with premeditated malice aims what is believed to be a properly functioning gun at another and pulls the trigger, intending to kill such person, but the gun misfires, the actor is guilty of attempted murder in the first degree.

In adopting § 28-201(1)(b), our Legislature has accepted the position of the Model Penal Code that attempt liability is primarily concerned with the dan-

gerous disposition of the actor, rather than just the dangerousness of such actor's conduct. However, it recognizes the legal principle that the law does not seek to punish evil thought alone. Therefore, the statute requires that the dangerous disposition be manifested by some intentional act which would constitute a substantial step toward the completion of the crime if the circumstances were as the actor believed them to be. Model Panel Code art. 5, Comments (Tent. Draft No. 10, 1960); Hawaii Rev. Stat. § 705-500, Commentary at 285 (Repl. 1976). Some examples of such conduct might be: Lying in wait for the intended victim; unlawful entry into a structure where it is contemplated that the crime will take place; possession or fabrication of the material necessary to complete the act which finally would constitute the crime; or soliciting an innocent agent to engage in conduct constituting an element of the crime. Ark. Stat. Ann. § 41-701, Commentary at 92-93 (Repl. 1977); Model Penal Code § 5.01 at 48-68 (Tent. Draft No. 10, 1960). The determination of whether the actor's conduct constituted a substantial step toward the completion of the crime is a question of fact. Hawaii Rev. Stat., *supra* at 285. All questions of fact have been resolved against the defendant by his plea of guilty. We believe that the meaning of § 28-201(a)(a) and (b) is abundantly clear.

Subsection (2) of § 28-201 is, at best, perhaps inartfully drafted and unduly complex. However, difficulty in determining the meaning of the language of a statute does not automatically render it unconstitutionally vague and ambiguous. *State v. Valencia, supra.* Beyond that, as applied to the defendant in this case, it adds nothing to subsections (1)(a) and (b). It simply restates that if one purposefully and with deliberate and premeditated malice intends to kill another and engages in conduct which constitutes a substantial step in a course of conduct intending to cause such death, the actor is guilty of attempted murder in the first degree. It does appear to cover an additional situation not ap-

plicable here: where the actor does not intend to cause the specific result but engages in conduct which is *known* by him in the natural progression of events to cause such result, i.e., the actor blows up an occupied building not intending to cause the death of any people yet believing in the inevitability of this result; however, in spite of the explosion, fortuitously no one is injured. Both Arkansas and Hawaii have statutes containing almost identical language to our § 28-201(2), and in their commentaries explain the language "known to cause such a result," as we have above. Ark. Stat. Ann. § 41-701(2), Commentary at 94 (Repl. 1977); Hawaii Rev. Stat. § 705-500(2), Commentary at 284 (Repl. 1976). They also have reckless or negligent homicide statutes which permit prosecution for intentionally engaging in conduct which is known to cause death, although not intending specifically to kill. Ark. Stat. Ann. § 41-1503 (b) (Repl. 1977) provides that one is guilty of murder in the second degree if "he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." Hawaii Rev. Stat. § 707-702 (Repl. 1976) includes within the definition of manslaughter "if (a) He recklessly causes the death of another person." However, in patterning Nebraska's § 28-201(2) after the criminal codes of Arkansas, Hawaii, or some other state having a similar provision, our Legislature did not see fit to also include nonintentional conduct within its murder definition, as indicated by the examples set forth above. Consequently, the "known to cause such a result" provision would not constitute an element of the crime of attempted murder.

Therefore, although we do not believe that the challenged language amounts to unconstitutional ambiguity, it is superfluous to the prosecution of the defendant here, and § 28-201(1)(b) clearly applies. The defendant has no standing to challenge as vague a portion of the language of a statute which does not apply to his conduct when an unambiguous section of the

statute clearly applies to such conduct. *State v. Shiffbauer*, 197 Neb. 805, 251 N.W.2d 359 (1977).

Defendant's other assignment of error is based in part on our holding in *In re Interest of Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980). In that case we held that the information was wholly invalid because it did not describe a crime. Durand, a minor, was charged under the juvenile statutes with violating the then existing Neb. Rev. Stat. § 28-533 (Reissue 1975) (repealed in 1979), which made it a felony to "willfully and maliciously" enter a dwelling house and attempt to "rob or steal." The information in that case charged only that "said child did willfully and maliciously enter a dwelling . . . with the *intent* to steal." (Emphasis supplied.) We said that "[t]he mere entry of a building with the intent to steal, absent any attempt or the commission of a crime, is without the statute; it is not proscribed by the statute." *Id.* at 417, 293 N.W.2d at 385. Stated another way, paraphrasing from syllabus 1, the mere allegation of an intent to commit a crime, unaccompanied by an allegation of overt acts toward its accomplishment, is defective. Of course, in the instant case, the information alleged more than an intent to commit a crime; it alleged an attempt to purposely and with deliberate and premeditated malice kill another person.

Nevertheless, the defendant insists that in *Gandy v. The State*, 13 Neb. 445, 14 N.W. 143 (1882), a contempt proceeding wherein the information charged that the defendant attempted to hinder the due administration of justice, we said that there is a "necessity of stating the particular acts constituting the alleged attempt." *Id.* at 449, 14 N.W. at 145. The quotation is accurate. However, the distinguishing features of that case are that there was no statutory provision containing a definition of an attempted crime and, furthermore, Gandy had called the court's attention to the alleged defect by moving to quash the information.

As a practical matter, we believe that the information here, coupled with the statutory provisions, ade-

quately informed Sodders of the crime with which he was charged, and was sufficiently definitive so as to permit him to plead the judgment as a bar to a later prosecution. We agree with the reasoning of the Court of Criminal Appeals of Texas in the case of *Green v. State*, 533 S.W.2d 769 (Tex. Crim. 1976), in which the defendant had been charged with attempting to enter a building with intent to commit theft. "While the better practice would be to allege the act constituting the attempt, we do not conclude that the omission is fundamental error to require reversal in absence of a motion to quash. To the extent *Fonville v. State*, Tex. Cr. App., 62 S.W. 573 is in conflict, the same is overruled. Nor do we find that the failure to allege the act deprived the appellant of the opportunity to prepare a defense." *Id.* at 770. See, also, *People v. Miller*, 2 Cal. 2d 527, 42 P.2d 308 (1935); *State v. Wray*, 142 Wash. 530, 253 P. 801 (1927). It cannot seriously be contended, nor is it claimed by the defendant, that he did not understand the conduct with which he was charged or that the same was unlawful.

We hold that, in the absence of a motion to quash, an information which alleges an attempt to commit an act or acts which if successful would constitute a statutory crime sufficiently charges an attempted crime so as to withstand a jurisdictional attack made for the first time on appeal. *Nelson v. State*, 167 Neb. 575, 94 N.W.2d 1 (1959). To the extent that *Gandy v. The State, supra*, is in conflict with this opinion, it is overruled.

Considering the seriousness of the crime attempted, and the defendant's actions to accomplish its completion, we do not believe that the trial court abused its discretion in imposing the sentence which it did in this case.

The judgment and sentence of the District Court are affirmed.

AFFIRMED.